***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones and the briefs and arguments of the parties. The appealing party has shown good grounds to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Penn National Insurance Company is the carrier on risk.
4. Plaintiff sustained a compensable injury by accident, a hernia injury, arising out of and in the course of his employment with defendant-employer.
5. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1-A and 1-B.
6. Industrial Commission forms and filings were stipulated into evidence as Stipulated Exhibit 2.
7. The depositions of Ted Kuntsling, M.D., Gregory Scott Pape, M.D., David A. Schwartz, M.D., Joseph McCabe, D.O. and Anita Buck, R.N. were received and admitted into evidence.
8. The issues before the undersigned are: (i) whether plaintiff's current condition is causally related to his compensable injury by accident; (ii) if so, what compensation, if any, is due plaintiff; (iii) whether defendants are estopped from denying plaintiff's pulmonary condition; (iv) whether plaintiff is entitled to attendant care for his current condition; (v) what is plaintiff's average weekly wage; (vi) whether plaintiff is entitled to attorney's fees for defendants' alleged unreasonable defense of this claim.
 *********** EVIDENTIARY RULINGS
The objections raised in the deposition of Ted Kunstling, M.D., Gregory Scott Pape, M.D., David A. Schwartz, M.D., Joseph McCabe, D.O., and Anita Buck, are OVERRULED.
 ***********
The Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner of this matter, plaintiff was forty-four (44) years old and had not completed high school. Plaintiff is married and has one (1) child. Plaintiff previously served as a machinist in the United States Navy and was employed as an auto mechanic for more than ten (10) years with defendant-employer where his responsibilities included car repair and maintenance, service station attendant and tow truck driver.
2. Plaintiff worked forty (40) hours per week at a rate of $6.50 per hour. Plaintiff also earned between $25.00 to $35.00 each week for two (2) or three (3) wrecker calls.
3. Plaintiff never received a payroll check but was paid by Herbert Kelly, owner of defendant-employer, in cash. Plaintiff's personal records for 1996 and 1997 were destroyed as a result of hurricanes in 1998.
4. Defendant-Carrier initially paid temporary total disability compensation to plaintiff pursuant to a Form 60, which indicated plaintiff's average weekly wage as $260.00, which yielded a weekly compensation rate of $173.34. Subsequently, the Industrial Commission determined plaintiff's average weekly wage based upon the submitted Form 22 to be $180.60, which yielded a compensation rate of $120.41 and defendants began paying this amount in October 2000. However, based upon tax returns submitted by the parties, the Full Commission finds that plaintiff's average weekly wage was $295.00 per week, yielding a compensation rate of $196.67.
5. On September 16, 1997, plaintiff was using a pry bar to change a crankshaft when he felt a pop and severe pain in his abdominal wall.
6. Plaintiff notified Herbert Kelly of this injury and went to Carteret General Hospital where he was diagnosed with a hernia.
7. Plaintiff was referred to Richard Wray, M.D., for hernia surgery. Dr. Wray performed surgery on Friday, September 19, 1997. Plaintiff was released from the hospital the next day, Saturday, September 20, 1997.
8. On Sunday, September 21, 1997, plaintiff developed chest tightness, shortness of breath and wheezing. Plaintiff was taken to Carteret General Hospital and admitted. Plaintiff was diagnosed with pneumococcal pneumonia, the most common type of pneumonia and haemophilus influenza.
9. Plaintiff had asthma during his childhood and adulthood and used Primatene mist for this condition throughout his lifetime.
10. Plaintiff has been smoking for more than thirty years. Plaintiff began smoking at the age of twelve or thirteen and had smoked two packs per day until 1998. Further, plaintiff continued to smoke during 1999. Plaintiff continued to smoke two packs a day from 2000-2001. Plaintiff also admitted that his doctors advised him to stop smoking prior to his surgery in 1997. Plaintiff testified that he quit smoking approximately five weeks prior to the hearing before the deputy commissioner on February 25, 2002.
11. Gregory Scott Pape, M.D. is the Division Chief of Pulmonary and Critical Care Medicine and Assistant Professor at East Carolina School of Medicine and is certified in three specialties, pulmonology, critical care and internal medicine. Dr. Pape evaluated plaintiff on February 15, 2001. Dr. Pape testified that it was likely that plaintiff did have some chronic obstructive lung disease prior to his hernia surgery based on his history of reactive airway disease as a child and his significant smoking history, which also increased plaintiff's risk of acquiring a respiratory infection such as pneumonia.
12. Dr. Pape referred to the guidelines of the American Thoracic Society in determining whether plaintiff acquired this pneumonia in the community or in the hospital. Those guidelines indicate that if the pneumonia develops within the first five days of hospitalization, then the pneumonia is more likely to be a community-acquired pneumonia. Hospital patients' oral pharynx and sometimes stomach can become colonized with gram-negative bacteria. A period of time is required for the colonization of these hospital-acquired pathogens after exposure. If there occurs a subsequent aspiration of oral pharyngeal or gastric secretions, then this can lead to the colonization of pathogens or the development of pneumonia. Consequently, the American Thoracic Society's guidelines conclude that a hospital patient who develops pneumonia within the first five days of hospitalization most likely has a pneumonia developed from community-acquired pathogens. Herein, plaintiff developed pneumonia within one day of being released from the hospital and within two days of the hospitalization; therefore, his pneumonia was more likely acquired in the community rather than the hospital setting.
13. Dr. Pape testified that, contrary to the initial read of the x-ray taken just prior to his hospitalization as showing plaintiff's lungs to be clear, it was possible the x-rays showed very early stages of a developing respiratory infection or pneumonia. Dr. Pape testified that more likely than not plaintiff's subsequent respiratory problems were not related to his hernia surgery. Dr. Pape is of the opinion that plaintiff's respiratory problems resulted from his underlying airway disease and the community-acquired pneumonia. Dr. Pape concludes that the hernia surgery did not cause or contribute to the plaintiff's underlying airway disease or the pneumonia.
14. David A. Schwartz, M.D. is the Chief of Pulmonary Medicine at Duke University Medical Center. Dr. Schwartz first examined plaintiff on February 8, 2001. After a review of a culture of the sputum that plaintiff was coughing on September 21, 1997 on his re-admission to the hospital just after the surgery and an abnormal chest x-ray performed on September 23, 1997, Dr. Schwartz opined that plaintiff had pneumococcal pneumonia, the most common type of pneumonia. Further, after reviewing plaintiff's medical records and the VQ scan from the hospital, Dr. Schwartz testified that plaintiff did not suffer a pulmonary embolism or have thromboembolic disease. Based upon plaintiff's thirty-plus year history of cigarette smoking and his history of asthma, Dr. Schwartz testified that the respiratory and pulmonary problems that plaintiff has experienced since September 1997 until the present are more likely than not unrelated to the hernia surgery. Further, Dr. Schwartz testified that plaintiff's current diagnosis of chronic obstructive pulmonary condition was not aggravated by the pneumonia.
15. Upon discharge from the hospital on September 29, 1997, plaintiff was diagnosed with severe obstructive lung disease.
16. As of October 1997, plaintiff was treated by Joseph Nutz, M.D., for his pulmonary condition.
17. On or about October 22, 1997, Dr. Wray released plaintiff to return to work from the standpoint of his hernia repair. Plaintiff remained under the care of Dr. Nutz and was not released to return to work because of his pulmonary condition.
18. On October 25, 1997, plaintiff was admitted to the hospital and diagnosed with chronic obstructive pulmonary disease. During this hospital stay, plaintiff began taking prednisone.
19. In November 1997, defendant-carrier referred plaintiff to Ted R. Kunstling, a Pulmonary Disease specialist with Raleigh Internal Medicine. Dr. Kunstling determined plaintiff experienced "an exacerbation of chronic obstructive pulmonary disease by a lower respiratory infection, which occurred subsequent to his inguinal hernia repair".
20. Dr. Kuntsling initially based his opinion of causal relation on the time sequence of events, because plaintiff had the hernia surgery and then developed pneumonia. By the time of his deposition on April 24, 2002, Dr. Kuntsling opined that the cause of plaintiff's lower respiratory infection was the aspiration of oral secretions in the lungs during the hernia surgery. Dr. Kuntsling stated that his theory of aspiration during surgery was based on the time sequence of events and that such a complication was unusual. However, during Dr. Kuntsling's first visit with plaintiff on December 4, 1997, he recorded in his own medical notes that there were no aspirations during the course of plaintiff's hernia surgery.
21. Though he treated plaintiff prior in time to Dr. Pape and Dr. Schwartz, Dr. Kunstling is not in a better position than these doctors to determine whether plaintiff's hernia surgery is the cause of plaintiff's subsequent pulmonary and respiratory conditions. Dr. Kunstling bases his causation opinion on incorrect facts and on a temporal relation between the hernia surgery and the respiratory problems plaintiff has developed. Dr. Kunstling's opinion is given less weight than that of Dr. Pape and Dr. Schwartz, who both opine that plaintiff's current pulmonary conditions are a result of a combination of his 20-plus year smoking history, his asthma and the community-based pneumonia he acquired prior to his hernia surgery.
22. Plaintiff remains symptomatic despite aggressive treatment in 1998. On April 27, 1998, Dr. Kunstling indicated plaintiff could return to work in jobs that required no strenuous exertion, no exposure to dust, no fumes or temperature extremes as a result of his pulmonary and respiratory conditions.
23. On May 28, 1998, Dr. Kunstling indicated plaintiff had reached maximum medical improvement as to his asthma and will continue to need treatment for future exacerbations.
24. Dr. Kunstling recommended plaintiff engage in vocational rehabilitation in May 1998.
25. Although plaintiff has been offered several jobs such as a cab driver or deliveryman, plaintiff was too symptomatic to undertake gainful employment. Thereafter, Dr. Kunstling has verified plaintiff was unable to accept employment and on May 13, 1999, Dr. Kunstling indicated plaintiff was totally and permanently disabled as result of his pulmonary condition.
26. In April 2000, Joseph McCabe, D.O., an osteopath and general practitioner in Morehead City, began treating plaintiff. He indicated plaintiff's condition is worsening and plaintiff should not be left at home by himself as he is not able to administer his medications.
27. Plaintiff has been relying upon his wife for assistance as his pulmonary condition has worsened, particularly since January 1, 2000. Plaintiff's health condition has taken a toll on plaintiff's wife.
28. There were substantial questions of both law and fact in this matter and the defense of this action was reasonable.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On September 16, 1997, plaintiff sustained a compensable injury by accident, arising out of and in the course of his employment with defendant-employer when he sustained a hernia. N.C. Gen. Stat. §97-2(6).
2. As result of his compensable injury by accident, plaintiff is entitled to temporary total disability from September 17, 1997 until October 22, 1997, the date plaintiff was released to return to work following his hernia surgery. This compensation should be paid based upon an average weekly wage of $295.00 yielding a compensation rate of $196.67 per week. N.C. Gen. Stat. § 97-29.
3. An award of benefits cannot stand if "there is no expert medical testimony tending to establish a causal relationship between the work related accident and the disability for which compensation is sought."Click v. Pilot Freight Carriers, Inc., 300 N.C. 164 at 167, 265 S.E.2d 389,391 (1980). "Could or might" expert testimony is insufficient to support a causal connection when there is additional evidence or testimony showing the expert's opinion to be a guess or mere speculation. Young v.Hickory Business Furniture, 353 N.C. 227 at 233, 538 S.E.2d 912 at 916 (2000). Dr. Kunstling's opinion concerning the causal relation between plaintiff's hernia operation and his pulmonary condition is based on speculation concerning the temporal relationship of the two events rather than medical evidence and his later opinion based on an aspiration theory is faulty. Even his own office notes, which were taken closer in time to the actual events, record there was no aspiration during the hernia surgery. Thus, Dr. Kunstling's opinion is given less weight than that of Dr. Pape and Dr. Schwartz. Consequently, based on the greater weight of the competent medical evidence, plaintiff's pulmonary condition is not a result of plaintiff's hernia surgery and therefore is not compensable. N.C. Gen. Stat. § 97-2(6); Sims v. Charmes/Arby's Roast Beef,142 N.C. App. 154 (2001).
4. Plaintiff's hernia surgery did not materially aggravate or exacerbate plaintiff's pre-existing pulmonary and respiratory condition.Mitchell v. Fieldcrest Mills, Inc., 84 N.C. App. 661, 353 S.E.2d 638
(1987).
5. Plaintiff has received compensation from defendant-carrier, although at a lesser rate than that to which plaintiff is entitled. Therefore, plaintiff is entitled to payment by defendants of the difference between the rate of compensation paid and the rate to which plaintiff is entitled. Plaintiff is also entitled to an additional 10% late payment penalty on the amount owed by defendants. N.C. Gen. Stat. §§ 97-18(g),97-29.
6. Defendants shall receive a credit for all compensation that has been paid to date. N.C. Gen. Stat. § 97-42.
7. This claim involved substantial questions of both law and fact and the hearing of this matter was not unreasonably defended, and therefore no attorney's fees should be assessed pursuant to N.C. Gen. Stat. §97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For his total disability resulting from his hernia surgery, plaintiff is entitled to total disability compensation at a rate of $196.67 for the period from September 17, 1997 until October 27, 1997. Plaintiff has received compensation from defendant-carrier, although at a lesser rate than that to which plaintiff is entitled. Therefore, defendants shall pay plaintiff the difference between the compensation paid and that which was due. Payment shall be made in a lump sum, subject to attorney's fees approved below. Defendants are entitled to a credit for compensation paid to plaintiff.
2. Plaintiff's claim for compensation for his pulmonary and respiratory illness is hereby DENIED.
3. An attorney's fee of twenty-five percent (25%) of the amounts due plaintiff under this Award is hereby approved for plaintiff's counsel and shall be deducted from the lump sum due plaintiff under Paragraph 1 of this Award and shall be paid directly to plaintiff's counsel.
4. Defendants shall pay the costs.
This the 31st day of October 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
DISSENTING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER